**D. WILSON CONSTRUCTION CO., INC., Appellant,**

**v.**

**McALLEN INDEPENDENT SCHOOL DISTRICT, Appellee.**

**No. 13–92–422–CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 31, 1992.

Rehearing Overruled March 18, 1993.

Roger W. Hughes, Leo C. Salzman, Adams & Graham, Harlingen, for appellant.

Travis Hiester, Charles W. Hury, Kristen Clark, Atlas & Hall, McAllen, for appellee.

Before DORSEY, KENNEDY and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

This is an interlocutory appeal from a trial court's refusal to compel arbitration of a construction contract. Wilson Construction Company contracted with McAllen Independent School District to build certain improvements for the District. A dispute under the contract arose between the parties, and the construction company sought arbitration. The trial court refused to refer the matter to arbitration and this appeal resulted.

Appellant relies on two statutes to compel arbitration: the Federal Arbitration Act, 9 U.S.C.A. § 1, *et seq.* (West 1970 & Supp.1991) and the Texas Arbitration Act, TEX.REV.CIV.STAT.ANN. art. 224, *et seq.* (Vernon 1973 & Supp.1993). Texas Courts of Appeals obtain their jurisdictional authority to hear appeals from interlocutory orders from statutes. While the Texas Arbitration Act authorizes interlocutory appeals to Texas Courts, the Federal Act cannot. We have no jurisdiction to review by appeal an order denying arbitration under the Federal Act. *Jack B. Anglin Co., Inc. v. The Honorable Arthur Tipps,* 842 S.W.2d 266, 271–73 (1992). A party must seek a writ of mandamus to complain of a stay of arbitration when rights under the Federal Arbitration Act are asserted. Accordingly, all points of error founded on the right to compel arbitration under the Federal Arbitration Act are overruled for want of jurisdiction.

Our review of the court's order will be based on the application of the Texas Arbitration Act.

In 1987, the School District planned to build a new facility that included a gymnasium and an indoor swimming pool. The District hired Rike–Ogden, an architectural firm, to design the facility. Rike–Ogden placed a construction contract, with building specifications, up for public bid; Wilson responded with the winning bid. The parties entered into a contract and Wilson began construction.

The School District approved a certificate of substantial completion for the gymnasium and swimming pool facility on October 23, 1990. Soon thereafter, the School District found deficiencies and attempted to resolve these with Wilson. The parties were unable to resolve the problems concerning the swimming pool, although discussions continued from October 1990 to October 1991. The School District filed suit against Rike–Ogden, Wilson, and others as a result of the deficiencies in construction. Wilson filed a plea in abatement, contending that the contract it entered into with the School District contained an arbitration agreement and that the case should be disposed of accordingly.

The School District moved to stay arbitration and Wilson moved to compel. After a hearing, the trial court denied Wilson's motion and granted the District's. Wilson appeals from these actions.

The central issue on appeal is the validity of the arbitration provisions in the contract between Wilson and the School District. The construction contract consisted of several separate documents. That document calling for arbitration of disputes was entitled "General Conditions." The District maintains that it never received the General Conditions document and that Wilson never discussed arbitration when the parties negotiated the contract. On this basis, the District contends that it did not agree to those arbitration provisions and cannot be held to them. In the alternative, the School District contends that the agreement is invalid or unenforceable because it is contained in a document incorporated into the contract, that fraud, estoppel, and/or waiver apply to bar the arbitration, and that Wilson's act of including the arbitration agreement into the contract was unconscionable.

A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable unless grounds for revocation of the contract in law or in equity arise. TEX.REV.CIV.STAT.ANN. art. 224 (Vernon Supp.1993). Moreover, any agreement to submit a controversy to arbitration that is unconscionable at the time the agreement was made is not enforceable. TEX. REV.CIV.STAT.ANN. art. 224. When one party moves to compel arbitration and the other party refuses, the court shall order arbitration; however, if the opposing party denies the existence of an arbitration agreement, the court shall determine the existence of such an agreement and compel arbitration if one is found or deny it if one is not so found. TEX.REV.CIV.STAT.ANN. art. 224 (Vernon 1973).

By its first three points of error, Wilson contends that the trial court erred by staying arbitration and refusing to compel it because the agreement is valid and enforce-

able. By point six, Wilson contends that no evidence of fraud, estoppel, or waiver exists so as to bar enforcement of the arbitration agreement. By point eight, Wilson maintains that there is no evidence that its act of including the arbitration agreement into the contract was unconscionable.

Under the Texas Arbitration Act, if grounds exist at law or in equity to revoke the contract, or if the arbitration provision is deemed unconscionable, arbitration must not proceed. TEX.REV.CIV.STAT.ANN. art. 224. Applying this mandate, the District essentially contends that no agreement to arbitrate existed here, and that Wilson's inclusion of the arbitration provision in this agreement was unconscionable.

The creation of the District's contract with Wilson is critical here. The District invited Rike–Ogden to be the architect on this project. The contract between the two provided that the architect would prepare, for approval by the District, drawings and specifications for the construction of the new facility, including the necessary bidding information. The architect would also assist the District in the preparation of bidding forms, the Conditions of the Contract, and the form of the agreement between the District and the contractor.

Dan Ogden, the architect principally involved in this project, consulted with Clyde Lyons, the Assistant Superintendent for Business for the School District, dozens of times in the course of preparing the drawings and specifications for this project. Lyons was the person with the primary responsibility within the school district for producing the construction contract in final form. The specifications portion of the contract expressly made reference to "General Conditions" applicable to all phases of the contract and construction. Article Four of these General Conditions, "Administration of the Contract," contains an extensive Arbitration provision, section 4.5. This section discusses the controversies and claims subject to arbitration, when it may be demanded, rules and notices for arbitration, and the like.

Ogden testified that during his frequent discussions with Lyons, Lyons never told him to delete the arbitration provision from the contract. Lyons contends that this is because he never received the General Conditions and therefore was not aware of the arbitration provision. However, he conceded that he did not read the entire proposed contract and never requested a copy of the General Conditions from Rike–Ogden. Nevertheless, he approved the format of the contract and allowed Rike–Ogden to issue it to proposed bidders and contractors.

Lyons stated that when that contract was returned to him, completed by Wilson, although it made reference to the General Conditions of the contract, he did not request or read them. He reviewed the document only to assure that the blanks were properly filled in.

Lyons then sent the contract to the School District's attorney, Travis Heister. Heister, too, reviewed the Wilson/School District contract only to ensure that the blanks were properly filled in. He stated that he did not request or read the General Conditions section of this contract.

Nevertheless, the School District approved the contract documents as prepared by Rike–Ogden and submitted by Wilson, ultimately signing the contract. The District now argues that although the incorporation of General Conditions into this contract is clearly designated on the face of the document, because it never received the General Conditions document, it cannot be bound by the contents of that document. Further, it maintains that any inclusion of the arbitration clause into this contract was unconscionable.

As a general rule, a party who signs a contract is presumed to know its contents; absent a finding of fraud, its failure to read the contract will not discharge its obligations. *Eubank v. First Nat'l Bank of Bellville*, 814 S.W.2d 130, 134 (Tex. App.—Corpus Christi 1991, no writ); *Nautical Landings Marina v. First Nat'l Bank in Port Lavaca*, 791 S.W.2d 293, 298 (Tex.App.—Corpus Christi 1990, writ denied); *Williams v. Adams*, 696 S.W.2d 156, 159 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Parties to a contract

have an obligation to protect themselves by reading what they sign. *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392, 393 (Tex.1982); *Thigpen v. Locke,* 363 S.W.2d 247, 254 (Tex.1962). This Court has held that a party who signs a contract is charged with notice of its contents as a matter of law. *Estate of Degley v. Vega,* 797 S.W.2d 299, 304 (Tex.App.—Corpus Christi 1990, no writ).

In this case, the School District is complaining about the contract it prepared. The District attempts to transform its failure to request and review a portion of its contract into an act of deceit and trickery on Wilson's part. The District cannot assert that it was fraudulently induced to accept its own contract provisions or that Wilson should be estopped from enforcing them. For the same reason, any contention that the inclusion of the arbitration agreement was unconscionable is without merit, as is the assertion that the arbitration agreement is invalid or unenforceable merely because it was contained in a document incorporated into the contract by reference. Again, this was the School District's own contract. No fraud was practiced on the District as a matter of law. Points one, eight, and portions of points two and six are sustained.

The District also maintained that Wilson waived its right to arbitration because it failed to assert that right at any time during the year-long negotiations surrounding the building deficiencies. A presumption exists against waiving a contractual right to arbitration. *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.,* 809 S.W.2d 589, 592 (Tex.App.—Dallas 1991, writ dism'd w.o.j.); *USX Corp. v. West,* 759 S.W.2d 764, 767 (Tex.App.—Houston [1st Dist.] 1988, no writ). Merely delaying one's demand for arbitration is not a waiver of the right to make that demand; the inquiry is whether the delay resulted in prejudice to the other party. *Transwestern Pipeline,* 809 S.W.2d at 593; *USX Corp.,* 759 S.W.2d at 767. The Courts in *USX Corp.* and *Transwestern Pipeline* held that waiver will be found when the party seeking arbitration "sub-stantially invokes the judicial process to the detriment or prejudice of the other party." *Transwestern Pipeline,* 809 S.W.2d at 593; *USX Corp.,* 759 S.W.2d at 767.

In this case, Wilson and the School District negotiated their dispute for a year without resorting to the courts. When the parties could not settle their differences, the District filed its original petition on October 22, 1991. Wilson filed its plea in abatement contending that the controversy should be settled by arbitration just one month later, on November 27, 1991. On that date, no other action had been taken by the District. The judicial process had scarcely been invoked when Wilson moved to compel arbitration; no evidence exists that the District suffered any type of harm or prejudice in this regard. The District's attempted application of waiver to bar this arbitration is not meritorious. The remainder of point six is sustained.

By point five, Wilson responds to the School District's contention below that this dispute is not within the scope of the arbitration agreement. Any doubts regarding which issues may be resolved by arbitration will be decided in favor of arbitration. *Transwestern Pipeline,* 809 S.W.2d at 591. The arbitration provision states, in section 4.5.1, "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration...." The School District filed suit against Wilson for deficiencies in the construction of its building alleging, among other things, breach of contract. The District cannot now be heard to assert that this dispute does not fall within the confines of the arbitration clause at issue. Point five is sustained.

Similarly, by the remainder of point two, the School District alleges that the demand for arbitration was made after the statute of limitations had expired. The arbitration clause in the contract requires that the arbitration demand be made within the limitations period applicable to the actions alleged. For an action on a contract, that period is four years. Tex.Civ.Prac. & Rem.Code Ann. § 16.004 (Vernon 1986).

This disagreement arose in October of 1990. Demand for arbitration was made roughly thirteen months later, well within the four year limitations period. The District contends that Tex.Rev.Civ.Stat.Ann. art. 5160(G) (Vernon Supp.1993) applies to bar arbitration, providing for a one-year limitations period. However, the District concedes that the article pertains to suits against sureties on performance bonds. The article has no applicability to the breach of contract action here. Point two is sustained.

By point of error seven, Wilson rebuts the School District's argument below that Tex.Bus. & Com.Code Ann. § 17.42 (Vernon Supp.1993) bars arbitration of DTPA claims. Wilson contends that the District waived its rights under the DTPA. We note initially that § 17.42 does prohibit the waiver of a party's DTPA cause of action. Section 17.50(a) of the DTPA broadly provides, "A consumer may maintain an action where any of the following constitute a producing cause of actual damages." Nowhere in the DTPA is arbitration precluded, however. Moreover, in *Merrill Lynch v. Wilson*, 805 S.W.2d 38, 40 (Tex.App.—El Paso 1991, no writ), the Court held that the plaintiff's DTPA claim was so interwoven into the contract that it could not stand alone; therefore, that claim was properly submitted to arbitration. The Court reasoned that an agreement to submit to arbitration "all controversies arising out of the contract" may encompass tort claims inextricably intertwined with the contract. *Id.* at 39; *accord, Anglin*, 842 S.W.2d at 270–71.

The arbitration clause included in the Wilson/School District contract allows for the arbitration of any controversy or claim arising out of or relating to the agreement or the breach of it. The District's DTPA claim is based on Wilson's failure to perform the contract. It is encompassed within the broad language of the arbitration agreement. *See Capital Income Properties–LXXX, Inc. v. Blackmon*, 843 S.W.2d 22, 23 (Tex.1992) (per curiam). We hold that submitting the claim to arbitration is

not a violation of the DTPA no-waiver provision. Point seven is sustained.

By point of error nine, Wilson asserts that the trial court erred by denying his motion to compel arbitration on the grounds that the arbitration agreement is a deprivation of the District's right to a jury trial and access to the courts. Strong national and state policies exist favoring arbitration; every reasonable presumption favoring it will be accepted. *Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 919 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.). This Court has noted that when the Federal Arbitration Act was instituted, Congress declared its policy favoring arbitration and revoked the states' power to require a judicial forum when the parties had contracted to arbitrate. *CP & Assocs. v. Pickett*, 697 S.W.2d 828, 830 (Tex.App.—Corpus Christi 1985, no writ). We have held that arbitration is favored by the court as a means of managing ongoing lawsuits. *House Grain Co. v. Obst*, 659 S.W.2d 903, 905 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). When a party contractually agrees to arbitrate a dispute, it waives its rights to recourse in the courts. Point nine is sustained.

By point of error ten, Wilson maintains that the trial court erred by denying its motion to compel arbitration because the court failed to follow Tex.Rev.Civ.Stat. Ann. art. 225 (Vernon 1973). Article 225 provides, in pertinent part:

Sec. A. On application of a party showing an [arbitration agreement], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration; but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised *and shall order arbitration if so found for the moving party; otherwise, that application shall be denied.* (emphasis ours)

The trial court found evidence of both an agreement to arbitrate and no such agreement. The court then stated that the interests of justice would be best served by granting the District's motion to stay arbi-

tration. Wilson contends that the trial court failed to follow art. 225 by making its decision solely in the interests of justice.

We have carefully reviewed all of the evidence and find only evidence of an agreement to arbitrate. No evidence exists to show the absence of such an agreement. The trial court erred by refusing to order the controversy to arbitration and by refusing to stay further action in the court. Point of error ten is sustained.

The trial court's judgment is reversed, and we order the court to compel arbitration in this matter.