Opinion issued June 1, 2006











In The
Court of Appeals
For The
First District of Texas
__________

NO. 01-03-00463-CV
NO. 01-03-00532-CV
NO. 01-03-00533-CV




IN RE RAYMOND JAMES & ASSOCIATES, INC.; RAYMOND JAMES
FINANCIAL SERVICES, INC.; ROBERT THOMAS SECURITIES, INC.;
AND RAYMOND JAMES FINANCIAL, INC., Relators




Original Proceedings on Petitions for Writ of Mandamus




* * *




NO. 01-03-00389-CV




RAYMOND JAMES & ASSOCIATES, INC.; RAYMOND JAMES
FINANCIAL SERVICES, INC.; ROBERT THOMAS SECURITIES, INC.;
AND RAYMOND JAMES FINANCIAL, INC., Appellants

V.

ALICIA BOWMAN; DAVID ANDERSON CARP, AS TRUSTEE FOR L.E.
MINOR, JR. AND AS TRUSTEE FOR THE CARP FAMILY TRUST;
CHARLENE CARSON; MAURICE CARSON; DAVID DRUTZ; LYDIA
DRUTZ, INDIVIDUALLY, AS TRUSTEE FOR THE ROSE SUSSMAN
TRUST, AND AS TRUSTEE FOR THE SUSSMAN FAMILY TRUST;
DANA DRUTZ; JEFF DRUTZ; KAROLE FEDRICK; WEDSEL GROOM;
ANGELA GROOM; HOWARD HOCHMAN; SHIRLEY HOCHMAN;
E.Z. JONES; LENA JONES; KINDER MATERIALS; BETTY KOWIS;
SAM RAIA; TERESEA RAIA; J. MIKE SMITH; SADIE TINERALLA;
DAVID SHAW; KAREN SHAW; RICHARD ZISSA;
SHARON ZISSA; AND MARIA GARCIA, Appellees




On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 02-CV-126329




Consolidated for Pretrial Purposes with
__________

NO. 01-03-00530-CV




RAYMOND JAMES & ASSOCIATES, INC.; RAYMOND JAMES
FINANCIAL SERVICES, INC.; ROBERT THOMAS SECURITIES, INC.;
AND RAYMOND JAMES FINANCIAL, INC., Appellants

V.

EDWARD CEPIEL, INDIVIDUALLY AND AS TRUSTEE FOR THE ED
AND MARIE CEPIEL TRUST; MARIE CEPIEL, INDIVIDUAL AND AS
TRUSTEE FOR THE ED AND MARIE CEPIEL TRUST; MIKE ATLAS;
SID ATLAS; HELENE ATLAS; THEODORE CHESSER; MELODY
CHESSER; LAWRENCE COHEN; JIM FORREST; CHRISTOPHER
FORREST; JAMES GRACEY; GARY GRANT; EVA GRANT; ELEANOR
LENSKY; JERRY MENDELSON, INDIVIDUALLY AND AS TRUSTEE
FOR THE MENDELSON CHARITABLE TRUST; JUDY OFFMAN;
PLUM GLEN PARTNERS; STEPHEN PEREL; FRANCIS PEREL;
JOHN PEREL; PHILIP TANNENBAUM; ADELE TANNENBAUM;
JOHN WEST, INDIVIDUALLY AND AS TRUSTEE FOR OUIDA WEST;
VAN W. WILLIAMS; ROBBIE W. WILLIAMS, INDIVIDUALLY
AND AS TRUSTEE FOR THE WILLIAMS LIVING TRUST;
AND VIOLA ZABRANSKY, Appellees




On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 02-CV-126329
Assigned from the 56th District Court
Galveston County Texas
Trial Court Cause No. 02-CV-11141




And
__________

NO. 01-03-00531-CV




RAYMOND JAMES & ASSOCIATES, INC.; RAYMOND JAMES
FINANCIAL SERVICES, INC.; ROBERT THOMAS SECURITIES, INC.;
AND RAYMOND JAMES FINANCIAL, INC., Appellants

V.

BILL ASHWORTH; SANDRA ASHWORTH; G. EDWIN BROOKS;
AHLENE BROOKS; RONALD BROOKS; DAVID ANDERSON CARP;
WILLIAM CHAPLINE; LYNNE CHAPLINE; CHARLES HOWARD,
INDIVIDUALLY, AS TRUSTEE FOR THE JULIE RIVERS HOWARD
DRENNER TRUST, AND AS TRUSTEE FOR THE CHAD JOSEPH
RIVERS HOWARD TRUST (UGMA TRUST); LONNIE FEDRICK; JAMES
GOODIN; BRAD KLEIN; STEPHANIE KLEIN; FREDERICK T.
KUYKENDALL, III; MAYBERRY FAMILY LIMITED PARTNERSHIP;
JIM MCINGVALE; LINDA MCINGVALE; MELODY CHESSER, AS
TRUSTEE FOR THE TEDDY RALPH MOORE RESIDUAL TRUST;
EDDIE MOORE, SR.; EDDIE MOORE, JR.;
ONE DOG PROMOTIONS, INC.; RICHARD REED; DENISE REED;
LARRY ROGOVEIN; MELANIE ROGOVEIN, INDIVIDUALLY, AS
TRUSTEE FOR THE ROGOVEIN FAMILY REVOCABLE TRUST,
AND AS TRUSTEE FOR THE ROGOVEIN FAMILY TRUST; MARTIN
ROGOVEIN; DAVID SEELEY; SUSAN SEELEY; GREGORY WALLACE;
AND HUGH WEATHERLY, INDIVIDUALLY AND AS TRUSTEE FOR
THE WEATHERLY FAMILY TRUST, Appellees




On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 02-CV-126329
Assigned from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 21399 JG 02



 
O P I N I O N
          Appellants and relators Raymond James & Associates, Inc.; Raymond James
Financial Services, Inc.; Robert Thomas Securities, Inc.; and Raymond James
Financial, Inc. (the Raymond James defendants), filed motions to compel arbitration 
between the Raymond James defendants and 87 of the plaintiffs in this litigation. The
trial court denied the motions, and the Raymond James defendants filed interlocutory
appeals of that denial and petitions for writs of mandamus, asking this Court to order
the trial court to withdraw its orders denying the motions to compel and to compel
arbitration of the plaintiffs’ claims against the Raymond James defendants. We
conclude that the federal arbitration act applies to this case. Therefore, we dismiss
the three interlocutory appeals for want of jurisdiction. We conditionally grant the
Raymond James defendants’ petitions for writ of mandamus. 
BACKGROUND
          More than 100 plaintiffs filed three separate lawsuits


 against 15 defendants. 
The plaintiffs alleged various causes of action, including fraud and violations of the
Texas and Federal Securities Acts. Eighty-seven of these plaintiffs, the real parties
in interest (the Account Holders), had accounts with Robert Thomas Securities, Inc.
or its successor, Raymond James Financial Services, Inc. These accounts were
carried by Raymond James & Associates. 
          To open their accounts, the Account Holders signed a New Account Form,
which stated just above the signature line, 
By signing below, I acknowledge that I have received, read, understand and
agree to abide by all the terms and conditions set forth in the Client Agreement
incorporated herein by this reference. The Client Agreement contains a
binding arbitration clause and other provisions substantially affecting my
rights. ***I have detached and retained the Client Agreement for my
records.***
 
          The Client Agreement was revised and updated periodically, with the result
that there were seven versions of the Client Agreement over the period of time that
the Account Holders opened their accounts. All of these versions were substantially
similar. They each defined “I,” “me,” “we,” and “us” as “the undersigned and any
other actual or beneficial owner of property in this account.” They defined “you” and
“your” as “Raymond James & Associates, Inc. and the introducing broker, if
applicable.” They had a choice-of-law clause that stated, “This agreement shall be
construed in accordance with the laws of the State of Florida.” The two latest
revisions had expanded choice-of-law clauses stating the following: “This agreement
and any accounts opened hereunder shall be construed, interpreted and the rights of
the parties shall be determined in accordance with the internal laws of the State of
Florida (without referencing Choice of Law provisions of Florida or any other state).” 
The Client Agreement further provided, “I understand that when I sign the Client
Agreement, the Client Agreement becomes a legally binding contract between you
and me.” 
          The arbitration clause in the first three versions of the Client Agreement
provided as follows: 
           In a dispute or controversy . . . between me and you (including your
officers, directors, employees or agents and the introducing broker, if
applicable) we agree to first endeavor to settle the dispute in an amicable
manner by mediation at the request of either party. Thereafter, any unsettled
dispute or controversy will be resolved by arbitration conducted before the
New York Stock Exchange, Inc., the National Association of Securities
Dealers, Inc., or the American Stock Exchange, Inc., or other self-regulatory
organizations (SRO) subject to the jurisdiction of the Securities and Exchange
Commission (SEC) pursuant to the arbitration rules of the Exchange or SRO,
and in accordance with the United States Arbitration Act (Title 9 of the United
States Code). 

          The arbitration clauses in versions four and five were virtually identical to the
first three, except that they specified that the mediation would be “before the National
Association of Securities Dealers, Inc. at the request of either party.” The sixth
version was virtually identical to versions four and five, except that it changed “the
United States Arbitration Act” to read, “the Federal Arbitration Act . . . .” The
seventh version eliminated the mediation requirement and provided, 
Any dispute or controversy, either arising in the future or in
existence now, between me and you (including your officers, directors,
employees or agents and the introducing broker, if applicable) will be
resolved by arbitration conducted before the New York Stock Exchange,
Inc., the National Association of Securities Dealers, Inc., the American
Stock Exchange, Inc., or other self-regulatory organizations (SRO)
subject to the jurisdiction of the Securities and Exchange Commission
(SEC) pursuant to the arbitration rules of the applicable SRO, and in
accordance with the Federal Arbitration Act (Title 9 of the United States
Code). 

          The Raymond James defendants filed a motion to compel arbitration and an
amended motion to compel that added three Account Holders to the list of those who
the Raymond James defendants contended were bound by an arbitration agreement. 
The Raymond James defendants attached, in support of their motion, the affidavit of
J. Stephen Putnam. The affidavit stated, 
1.My name is J. Stephen Putnam. I am over the age of eighteen (18)
years and I am fully competent and duly authorized to make this
affidavit. I have personal knowledge of the facts stated herein. 
 
2.I am the President of Raymond James Financial Services, Inc. (formerly
Robert Thomas Securities, Inc.), and I have knowledge regarding the
procedures for opening new accounts through Raymond James
Financial Services (formerly Robert Thomas Securities, Inc.), to be
carried with Raymond James & Associates (“Raymond James”). 
 
3.The Plaintiffs listed on Exhibit A-1 signed the New Account Form
incorporating the Client Agreement attached as Exhibit A-2. Their
signature pages are attached as Exhibit A-3.
 
4.The Plaintiffs listed on Exhibit B-1 signed the New Account Form
incorporating the Client Agreement attached as Exhibit B-2. Their
signature pages are attached as Exhibit B-3. 
 
5.The Plaintiffs listed on Exhibit C-1 signed the New Account Form
incorporating the Client Agreement attached as Exhibit C-2. Their
signature pages are attached as Exhibit C-3. 
 
6.The Plaintiffs listed on Exhibit D-1 signed the New Account Form
incorporating the Client Agreement attached as Exhibit D-2. Their
signature pages are attached as Exhibit D-3. 
 
7.The Plaintiffs listed on Exhibit E-1 signed the New Account Form
incorporating the Client Agreement attached as Exhibit E-2. Their
signature pages are attached as Exhibit E-3. 
 
8.The Plaintiffs listed on Exhibit F-1 signed the New Account Form
incorporating the Client Agreement attached as Exhibit F-2. Their
signature pages are attached as Exhibit F-3. 
 
Further, Affiant sayeth not.
 
 /s/ 
                                                                             J. STEPHEN PUTNAM
 
SWORN TO AND SUBSCRIBED before me, Notary, on this the 24th
day of February, 2003.

The affidavit was signed by the Notary Public. 
          The Account Holders filed a response to the motion to compel in which they
argued, among other things, that there was no agreement to arbitrate. They attached,
as exhibits, approximately 50 Account Holders’ affidavits, which stated, in pertinent
part, “I have neither signed nor was I provided with a copy of the Client Agreement,
and I have not agreed to arbitrate any claims with Robert Thomas Securities, Inc.,
Raymond James Financial, Inc., Raymond James Financial Services, Inc. or Raymond
James & Associates, Inc.” By agreement of the parties and with leave of the trial
court, the Account Holders supplemented their response with another 15 affidavits
of Account Holders after the hearing. 
          The trial court conducted a hearing on the amended motion, which it denied. 
The Raymond James defendants filed interlocutory appeals of the trial court’s order
denying the motion to compel and petitions for writ of mandamus, contending that
the trial court erred in denying the motion to compel arbitration. 
DISCUSSION
Standard of Review
          Mandamus is an extraordinary remedy, that will issue only to correct a clear
abuse of discretion or a violation of a duty imposed by law when there is no adequate
remedy by appeal. In re Ford Motor Co., 165 S.W.3d 315, 317 (Tex. 2005) (orig.
proceeding) (citing In re Prudential Ins. Co., 148 S.W.3d 124, 135–36 (Tex. 2004));
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding); Johnson v.
Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding); In re
Taylor, 113 S.W.3d 385, 389 (Tex. App.—Houston [1st Dist.] 2003, orig.
proceeding). 
          A trial court abuses its discretion when it acts arbitrarily or unreasonably and
without reference to any guiding rules or principles. See Walker, 827 S.W.2d at 839;
In re Taylor, 113 S.W.3d at 389. The abuse-of-discretion standard has different
applications in different circumstances. Walker, 827 S.W.2d at 839. Because a trial
court has no discretion in determining what the law is, which law governs, or how to
apply the law, we review this category of discretionary rulings de novo. See id. at
840. In contrast, when we review a ruling that results from the trial court’s having
resolved underlying facts, we must defer to the trial court’s factual resolutions and
any credibility determinations that may have affected those resolutions and may not
substitute our judgment for the trial court’s judgment in those matters. See id. at
839–40. 
Agreement to Arbitrate
          A party seeking to compel arbitration must establish the existence of an
arbitration agreement and show that the claims raised fall within the scope of the
agreement. In re Palm Harbor Homes, Inc., 129 S.W.3d 636, 641 (Tex.
App.—Houston [1st Dist.] 2003, orig. proceeding). If one party denies that there is
a binding arbitration agreement, the trial court may summarily decide whether to
compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and
stipulations. Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992) (orig.
proceeding). Whether there is an enforceable agreement to arbitrate is a question of
law and is therefore reviewed de novo. Mohamed v. Auto Nation USA Corp., 89
S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding). 
Incorporation by Reference
          This case hinges on whether the New Account Form effectively incorporates
the Client Agreement by reference. An unsigned paper may be incorporated by
reference into a contract. Teal Const. Co. v. Darren Casey Interests, Inc., 46 S.W.3d
417, 420 (Tex. App.—Austin 2001, pet. denied) (citing Owen v. Hendricks, 433
S.W.2d 164, 166 (Tex. 1968)). “The specific language used is not important so long
as the contract signed by the defendant plainly refers to another writing.” Id. “An
arbitration agreement is not invalid or unenforceable merely because it is contained
in a document incorporated into the contract by reference.” Id. (citing D. Wilson
Constr. Co. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 230 (Tex. App.—Corpus
Christi 1992, writ dism’d w.o.j.)). 
          In this case, the Account Holders stipulated at the hearing on the motion to
compel arbitration that they signed the New Account Form. However, they contend
that the Client Agreement was not attached, as recited in the New Account Form, and
they filed sworn affidavits stating that they had not been provided with a copy of the
Client Agreement. Their affidavits did not state that they had not read the Client
Agreement or that their signatures on the New Account Form were obtained by
trickery or artifice. 
          A person who signs a contract is presumed to have read and understood the
contract and to have fully comprehended its legal effect, unless he establishes fraud
in the inducement or mental incapacity. Nguyen Ngoc Giao v. Smith & Lamm, 714
S.W.2d 144, 146 (Tex. App.—Houston [1st Dist.] 1986, no writ). Thus, we presume
that the Account Holders both read and understood the legal effect of the New
Account Form. 
          The New Account Form, in a statement just above the Account Holders’
signature line, incorporates the Client Agreement by reference, plainly referring to
the Client Agreement, which contains a binding arbitration clause. By their
signatures, the Account Holders acknowledged that they had received, read,
understood, and agreed to abide by the terms and conditions of the Client Agreement. 
Even if the Client Agreement was not attached to the New Account Form, and even
if the Account Holders never saw the Agreement, and even if the Client Agreement
was not signed, the Account Holders were nevertheless on notice that there was a
Client Agreement, that it contained a binding arbitration clause, and that it was
incorporated into the New Account Form by reference. We conclude that the Client
Agreement was incorporated into the New Account Form by reference. We hold that
the Raymond James defendants have established the existence of an arbitration
agreement. 
Scope of the Agreement
          The Raymond James defendants argue that the Account Holders do not dispute
that their claims fall within the scope of the agreement. The Account Holders
disagree, but they state their disagreement only in terms of their contention that there
was no arbitration agreement. They do not address the scope of the agreement
contained in the Client Agreement. 
          To determine whether a claim falls within the scope of an arbitration
agreement, this Court looks at the facts alleged and considers whether the facts touch
matters covered by the underlying agreement. Hou-Scape, Inc. v. Lloyd, 945 S.W.2d
202, 205 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding). Any doubts about
the scope of the agreement must be resolved in favor of arbitration. In re Palm
Harbor Homes, 129 S.W.3d at 641. 
          In this case, the arbitration clause is broad, providing, “In a dispute or
controversy, either arising in the future or in existence now, between [the
undersigned] and [Raymond James, Inc.] . . . any unsettled dispute or controversy will
be resolved by arbitration . . . .” The Account Holders’ complaints against the
Raymond James defendants are directly related to the subject of the
contract—securities transactions. We conclude that the Account Holders’ claims are
within the scope of the arbitration agreement. 
The Putnam Affidavit
          The Account Holders contend, by “cross-point,”


 that the affidavit of J. Stephen
Putnam is defective because it does not state that the facts contained within it are
“true and correct.” They argue that this affidavit was the only evidence supporting
the Raymond James defendants’ claim that an arbitration agreement existed and that
the affidavit should therefore be struck. 
          When an affidavit “reflects that it is based on personal knowledge and it is
subscribed to and sworn before a notary public, it is not defective if, when considered
in its entirety, its obvious effect is that the affiant is representing that the facts stated
therein are true and correct.” Texas Sting, Ltd. v. R.B. Foods, Inc., 82 S.W.3d 644,
651 n.8 (Tex. App.—San Antonio 2002, pet. denied); see also Woods v. Applemack
Enterps. Inc., 729 S.W.2d 328, 330 (Tex. App.—Houston [14th Dist.] 1987, no writ)
(holding that obvious effect of affidavit made on affiant’s personal knowledge and
sworn before notary public is that affiant has sworn that facts are true and correct). 
As in Woods, the obvious effect of Putnam’s affidavit was that he had sworn that the
facts stated were true and correct. 
          The Account Holders also complain that the Putnam affidavit states that he had
personal knowledge of procedures, but not of whether those procedures were
followed, and that the affidavit contained the legal conclusion that the “New Account
Forms incorporated the Client Agreements.” These complaints are without merit.
          The obvious purpose of Putnam’s affidavit was to connect the executed New
Account Forms with the proper Client Agreement, which Putnam could do because
he had knowledge of the procedures that were to be followed. His statement, “the
New Account Form incorporating the Client Agreement,” was a simple statement of
fact using the words of the New Account Form. We conclude that Putnam’s affidavit
sufficiently connected the Client Agreement with the New Account Form. 
Signatories to the Client Agreement
          The Account Holders contend that, because they did not sign a Client
Agreement (a fact that is uncontested), they cannot be bound by it. They argue that
the language of the Client Agreement requires that it be signed: “I understand that
when I sign the Client Agreement, this Client Agreement becomes a legally binding
contract . . . .” 
          When one document is incorporated into another by reference, the two
documents must be construed together. Wolfe v. Speed Fab-Crete Corp. Int’l, 507
S.W.2d 276, 278 (Tex. Civ. App.—Fort Worth 1974, no writ). Because the Client
Agreement is expressly incorporated into the New Account Form, specifically
advising the signatory that the Client Agreement contains a binding arbitration clause,
signing the New Account Form was tantamount to signing the Client Agreement. 
Therefore, by signing the New Account Form, the Account Holder accepted the terms
and conditions of the Client Agreement, including the arbitration provision. 
Unconsionability
          The Account Holders contend that the arbitration clause was unconscionable. 
But, they did not, as they claim, prove unconscionability in the trial court. They
argue that the clause was unconscionable because they were not given copies of the
Client Agreement, but that if they had been given such copies, the clause would be
even more unconscionable because the Client Agreement states that it would not be
effective unless signed, but had no signature line. The Account Holders cite no
authority for this reasoning. The Account Holders have not established that the
arbitration clause was unconscionable, and their argument is without merit. 
Participation of Non-Signatories
          The Account Holders contend, in the alternative, that, if they are bound by the
Client Agreement, it is with respect only to their claims against Raymond James &
Associates and not the other Raymond James defendants. The Account Holders argue
that the Raymond James defendants produced no evidence that Robert Thomas
Securities, Inc. and Raymond James Financial Services were introducing brokers and
therefore are not included in the definition of “you” in the Client Agreement. 
          Raymond James & Associates did not have to prove that the other three
Raymond James defendants were introducing brokers to bring them under the
umbrella of the arbitration clause in this case. When a signatory to a contract
containing an arbitration clause raises allegations of substantially interdependent and
concerted misconduct by both non-signatories and a signatory of the contract,
equitable estoppel allows the non-signatories to compel arbitration. In re EGL Eagle
Global Logistics, L.P., 89 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2002,
orig. proceeding) (citing McMillan v. Computer Translation Sys. & Support, Inc., 66
S.W.3d 477, 482 (Tex. App.—Dallas 2001, no pet.)). 
          In paragraph 34 of Plaintiffs’ Second Amended Petition, the Account Holders
state, “All Raymond James entities are collectively referred to as “Raymond James.” 
In paragraphs 86 through 88, the Account Holders allege various acts by Raymond
James without distinguishing between the separate entities. In paragraphs 92 through
157, the Account Holders set out various causes of action and damages, referring only
to “defendants” collectively. Thus, it is impossible to determine from the pleadings
any separate complaints against the four Raymond James defendants. 
          We conclude that the Account Holders’ pleadings preclude their challenge and
that the four Raymond James defendants were entitled to enforce the arbitration
clause. 
Application of Federal Arbitration Act
          The Account Holders complain that the Raymond James defendants did not
prove the application of the Federal Arbitration Act.


 The arbitration clause in the
Client Agreement provides that the arbitration would be conducted in accordance
with the United States (or Federal) Arbitration Act. Therefore, the parties have
agreed to arbitrate under the FAA. See In re Kellogg Brown & Root, 80 S.W.3d 611,
617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (concluding that FAA
applied because parties agreed to arbitrate under FAA). Furthermore, the Account
Holders’ complaints involve the sale of securities, and therefore involve interstate
commerce. See Eurocapital Group, Ltd. v. Goldman Sachs & Co., 17 S.W.3d 426,
430 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (stating that agreement dealing
with sale of securities involved interstate commerce). Thus, the FAA applies to this
dispute. 
CONCLUSION
          The Raymond James defendants have established the existence of an arbitration
agreement with the Account Holders and have shown that the Account Holders’
claims fall within the scope of the agreement. The Raymond James defendants have
also established that the Federal Arbitration Act applies to this arbitration. 
Accordingly, we hold that the trial court had no discretion to deny the Raymond
James defendants’ motion to compel arbitration. We conditionally grant the writ of
mandamus and order the trial court to vacate its order denying the Raymond James
defendants’ motion and to enter a new order compelling arbitration of the Account
Holders’ claims against the Raymond James defendants. We are confident that the
trial court will comply, and the writ will issue only if it does not. 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Keyes.