IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0326
════════════
 
In re D. Wilson Construction 
Company, et al., Relators
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
consolidated 
with
 
════════════
No. 05-0327
════════════
 
American Standard and the 
Trane Company, et al., Petitioners,
 
v.
 
Brownsville Independent School 
District, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District 
of Texas
════════════════════════════════════════════════════
 
 
Argued February 
14, 2006
 
 
Justice Willett delivered the opinion 
of the Court, in which Chief Justice 
Jefferson, Justice Hecht, Justice O’Neill, Justice Wainwright, Justice Medina, 
Justice Green, and Justice 
Johnson joined. 
 
Justice Brister filed a concurring 
opinion.
 
In this 
consolidated proceeding, we decide whether the court of appeals had jurisdiction 
over an interlocutory appeal under the Texas Arbitration Act and whether the 
parties’ arbitration agreements are ambiguous. We hold that the court of appeals 
had jurisdiction over the interlocutory appeal and that the agreements are not 
ambiguous. 
I. Background
In 1993, the 
Brownsville Independent School District contracted with two general contractors, 
D. Wilson Construction Company and Stotler Construction Company, to build two 
schools in Brownsville. Both contracts incorporate General Conditions and 
Supplementary Conditions. 
The General 
Conditions expressly incorporate AIA Document A201, a standard construction 
industry document published by the American Institute of Architects that details 
the parties’ respective rights, responsibilities and relationships on the 
project.[1] Paragraph 4.5 of A201 is titled 
“Arbitration,” and subparagraph 4.5.1, titled “Controversies and Claims Subject 
to Arbitration,” sets forth the broad, catch-all scope of the arbitration 
agreement: “Any controversy or Claim arising out of or related to the 
Contract, or the breach thereof, shall be settled by arbitration in accordance 
with the Construction Industry Arbitration Rules of the American Arbitration 
Association . . . .” 
The 
Supplementary Conditions state that they “modify, change, delete from or add to” 
the General Conditions. Among other things, the Supplementary Conditions “[a]dd 
new Clause 4.5.1.1” to the arbitration provision: “Except as otherwise 
provided in this Contract, any dispute concerning a question of fact arising 
under this contract, which is not disposed of by agreement shall be decided by 
[BISD] . . . . The decision of [BISD] shall be final and 
conclusive unless” it is timely appealed to the Superintendent and then to the 
BISD Board of Trustees, “whose decision shall be final and conclusive.” 
This 
litigation began when one of the subcontractors, American Standard and the Trane 
Company (Trane), sought injunctive relief against BISD to preserve evidence in a 
personal injury action that students and teachers brought against Trane in 
another court. BISD counterclaimed for alleged defects in the construction of 
the two schools and filed third-party actions against several parties, including 
general contractors Wilson and Stotler, as well as subcontractors and 
second-tier subcontractors. Trane and the third-party defendants filed or joined 
motions to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 
1–16, and the Texas Arbitration Act, 
Tex. Civ. Prac. & Rem. Code §§ 171.001–.098.[2] After a hearing, the trial court 
issued a brief letter ruling denying arbitration, saying “the Court finds the 
contract in question ambiguous.” Trane and the third-party defendants filed both 
a petition for writ of mandamus under the FAA and an interlocutory appeal under 
the TAA, and the court of appeals consolidated the two proceedings. __ S.W.3d 
__, __, Nos. 13-04-184-CV, 13-04-333-CV, 2005 WL 310777, at *1 (citing In re 
Valero Energy Corp., 968 S.W.2d 916, 916–17 (Tex. 1998)). The court of 
appeals dismissed the interlocutory appeal for want of jurisdiction, finding the 
TAA inapplicable since the dispute concerned a “‘transaction involving 
commerce.’“ Id. at __, 2005 WL 310777, at *2 (quoting In re MONY Sec. 
Corp., 83 S.W.3d 279, 282–83 (Tex. App.—Corpus Christi 2002, consolidated 
appeal and orig. proceeding). The court also denied the petition for writ of 
mandamus, holding that clause 4.5.1.1 in the Supplementary Conditions creates 
ambiguity. Id. at __, 2005 WL 310777, at *3. In this appeal, Trane and 
the third-party defendants complain that (1) the court of appeals erred in 
dismissing their interlocutory appeal under the TAA for want of jurisdiction, 
and (2) the trial court erred in deeming the arbitration agreements 
ambiguous and abused its discretion in denying their motions to compel 
arbitration. 
II. Jurisdiction of the Court of Appeals
Trane and the 
third-party defendants first argue that the court of appeals erred in dismissing 
their TAA-based interlocutory appeal for want of jurisdiction. We agree.[3] 
The contracts 
in question reference neither the FAA nor TAA, merely noting that “[t]he 
Contracts shall be governed by the law of the place where the Project is 
located.” We have interpreted identical language to invoke federal and 
state law. In re L & L Kempwood Assocs., L.P., 9 S.W.3d 125, 
127–28 (Tex. 1999) (per curiam) (consolidated appeal and orig. proceeding). 
Trane and the third-party defendants sought relief under both statutes in the 
court of appeals, bringing a petition for writ of mandamus under the FAA, see 
Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272–73 (Tex. 1992), and an 
interlocutory appeal under the TAA, Tex. 
Civ. Prac. & Rem. Code § 171.098(a)(1). 
While 
refusing jurisdiction under the TAA, the court of appeals recognized that it at 
least had jurisdiction under the FAA to consider the mandamus petition. __ 
S.W.3d at __, 2005 WL 310777, at *2. We held in Jack B. Anglin Co. that 
mandamus is appropriate to review a trial court’s denial of a motion to compel 
arbitration under the FAA. 842 S.W.2d at 272–73.
The court of 
appeals determined that it lacked jurisdiction over the interlocutory appeal 
under the TAA because the construction contracts involved interstate commerce, 
thus implicating the FAA. __ S.W.3d at __, 2005 WL 310777, at *2; see Perry 
v. Thomas, 482 U.S. 483, 489 (1987) (the FAA applies when the dispute 
concerns a “contract evidencing interstate commerce”); 9 U.S.C. § 1 
(“‘commerce’ . . . means commerce among the several States”); In re 
L & L Kempwood Assocs., L.P., 9 S.W.3d at 127 (noting that the 
FAA “extends to any contract affecting commerce, as far as the Commerce Clause 
of the United States Constitution will reach”). 
The court of 
appeals is not alone in dismissing interlocutory appeals under the TAA when the 
FAA applies. See Kroupa v. Casey, Nos. 01-05-00224-CV, 01-05-00376-CV, 
2005 WL 3315279, at *4 (Tex. App.—Houston [1st Dist.] 2005, consolidated appeal 
and orig. proceeding) (not designated for publication); Am. Med. Tech., Inc. 
v. Miller, 149 S.W.3d 265, 269–70 (Tex. App.—Houston [14th Dist.] 2004, 
consolidated appeal and orig. proceeding); Verlander Family Ltd. P’ship v. 
Verlander, No. 08-02-00135-CV, 2003 WL 304098, at *3 (Tex. App.—El Paso 
2003, no pet.); Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 498 (Tex. 
App.—San Antonio 2000, consolidated appeal and orig. proceeding). Other courts 
have granted mandamus relief and dismissed the consolidated interlocutory appeal 
as moot. See, e.g., Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby, 
183 S.W.3d 891, 895 & n.5 (Tex. App.—Austin 2006, consolidated appeal and 
orig. proceeding); In re MacGregor (FIN) Oy, 126 S.W.3d 176, 181, 184 
(Tex. App.—Houston [1st Dist.] 2003, consolidated appeal and orig. 
proceeding).
We take this 
opportunity to clarify precisely when the FAA preempts the TAA. Many courts of 
appeals wrongly view the FAA and TAA as mutually exclusive, but the United 
States Supreme Court and this Court have held a different view for some 
time: the FAA only preempts contrary state law, not consonant state 
law. The United States Supreme Court has said: 
 
The FAA 
contains no express pre-emptive provision, nor does it reflect a congressional 
intent to occupy the entire field of arbitration. But even when Congress has not 
completely displaced state regulation in an area, state law may nonetheless be 
pre-empted to the extent that it actually conflicts with federal law—that is, to 
the extent that it “stands as an obstacle to the accomplishment and execution of 
the full purposes and objectives of Congress.” The question before us, 
therefore, is whether application of [state law] to stay arbitration under this 
contract in interstate commerce . . . would undermine the goals and 
policies of the FAA.
 
Volt Info. 
Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 
477–78 (1989) (citations omitted) (quoting Hines v. Davidowitz, 312 U.S. 
52, 67 (1941)). Similarly, this Court has noted that the FAA “preempts state 
statutes to the extent they are inconsistent with that Act.” Jack B. Anglin 
Co., 842 S.W.2d at 271. 
Recently, in 
the case of In re Nexion Health at Humble, Inc., this Court articulated a 
four-factor test to determine whether the TAA would thwart the goals and 
policies of the FAA in a particular case. 173 S.W.3d 67, 69 (Tex. 2005) (per 
curiam) (construing 9 U.S.C. § 2). The FAA only preempts the TAA 
if: “(1) the agreement is in writing, (2) it involves interstate 
commerce, (3) it can withstand scrutiny under traditional contract defenses 
[under state law], and (4) state law affects the enforceability of the 
agreement.” Id. (emphasis added). In today’s case, the court of 
appeals ignored the fourth factor. The mere fact that a contract affects 
interstate commerce, thus triggering the FAA, does not preclude enforcement 
under the TAA as well. For the FAA to preempt the TAA, state law must refuse to 
enforce an arbitration agreement that the FAA would enforce, either because (1) 
the TAA has expressly exempted the agreement from coverage, see Tex. Civ. Prac. & Rem. Code 
§ 171.002(a) (detailing various claims the TAA “does not apply to”), 
or (2) the TAA has imposed an enforceability requirement not found in the 
FAA, see In re Nexion Health at Humble, Inc., 173 S.W.3d at 69 
(“The TAA interferes with the enforceability of the arbitration agreement by 
adding an additional requirement—the signature of a party’s counsel—to 
arbitration agreements in personal injury cases.”). The parties have asserted 
nothing in the TAA or other state law that would subvert enforcement of the 
agreements at issue. Therefore, the FAA does not preempt the TAA in this case, 
and the court of appeals had jurisdiction under both laws.[4]
III. Ambiguity of the Arbitration Agreements
Trane and the 
third-party defendants next argue that the trial court wrongly deemed the 
arbitration agreements ambiguous and abused its discretion in denying their 
motions to compel arbitration. We decide the merits under our mandamus 
jurisdiction.[5]
Mandamus is 
proper to correct a clear abuse of discretion when there is no adequate remedy 
by appeal, Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. 
proceeding), as when a party is erroneously denied its contracted-for 
arbitration rights under the FAA, Jack B. Anglin Co., 842 S.W.2d at 
272–73. Also, a trial court “has no ‘discretion’ in determining what the law is 
or applying the law to the facts.” Walker, 827 S.W.2d at 840. In 
evaluating a motion to compel arbitration, a court must determine first whether 
a valid arbitration agreement exists, and then whether the agreement encompasses 
the claims raised. In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 
(Tex. 1999) (per curiam). When deciding whether the parties agreed to arbitrate 
under the FAA, courts should apply ordinary state law principles regarding the 
formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 
U.S. 938, 944 (1995); J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 
227–28 (Tex. 2003). 
In a letter 
ruling, the trial court found “the contract in question ambiguous”; however, the 
record does not indicate whether the trial court was uncertain as to the 
agreements’ existence or merely their scope. We address these two issues in 
turn.
A. Ambiguity Concerning the Existence of Valid 
Agreements
Whether a 
valid arbitration agreement exists is a legal question subject to de novo 
review. J.M. Davidson, Inc., 128 S.W.3d at 227. Whether contractual 
ambiguity exists is likewise a question of law. See Columbia Gas Transmission 
Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). Inartful 
drafting does not alone render a contractual provision ambiguous. See 
Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951). A 
contract is ambiguous only if it is subject to “two or more reasonable 
interpretations after applying the pertinent rules of construction.” Columbia 
Gas Transmission Corp., 940 S.W.2d at 589. Ambiguity does not exist merely 
because the parties assert forceful and diametrically opposing interpretations. 
Id. 
BISD contends 
that the contracts with Wilson and Stotler (1) contain no arbitration 
language at all, or (2) contain ambiguous language. The trial court’s 
three-sentence letter ruling is silent on the first point, while the court of 
appeals, “[a]ssuming without determining that the contracts contain arbitration 
language,” concluded that “the supplementary conditions create ambiguity.” __ 
S.W.3d at __, 2005 WL 310777, at *3.
We disagree 
with BISD that its contracts with Wilson and Stotler contained no arbitration 
language. The contracts validly and expressly incorporate by reference the 
expansive arbitration language of subparagraph 4.5.1 of A201. Innumerable 
contracts are consummated every day in Texas that incorporate other documents by 
reference. A contractual term is not rendered invalid merely because it exists 
in a document incorporated by reference, Owen v. Hendricks, 433 S.W.2d 
164, 166 (Tex. 1968), and we agree with the courts of appeals that 
arbitration-related language is no exception to this rule. See, e.g., 
Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc., 46 
S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied) (holding that an unsigned 
arbitration agreement contained in a document incorporated by reference into the 
signed contract constitutes an enforceable arbitration agreement); D. Wilson 
Constr. Co. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 230 (Tex. 
App.—Corpus Christi 1992, writ dism’d w.o.j.) (rejecting the argument that an 
arbitration agreement incorporated by reference is invalid or unenforceable). 
Accordingly, we reject BISD’s argument that these provisions were not validly 
incorporated into the contracts with Wilson and Stotler.
We likewise 
reject BISD’s argument, and the trial court’s holding, that the arbitration 
agreements are ambiguous. Subparagraph 4.5.1 of A201 states: ”Any 
controversy or Claim arising out of or related to the Contract, or the breach 
thereof, shall be settled by arbitration in accordance with the Construction 
Industry Arbitration Rules of the American Arbitration Association 
. . . .” The Supplementary Conditions “[a]dd new Clause 4.5.1.1” 
to the arbitration provision: ”Except as otherwise provided in this 
Contract, any dispute concerning a question of fact arising under this contract, 
which is not disposed of by agreement shall be decided by [BISD] 
. . . . The decision of [BISD] shall be final and conclusive 
unless” it is timely appealed to the Superintendent and then to the BISD Board 
of Trustees, “whose decision shall be final and conclusive.” 
The caption 
of clause 4.5.1.1 in the Supplementary Conditions evinces the parties’ intent to 
“[a]dd new Clause 4.5.1.1 to subparagraph 4.5.1.” Clause 4.5.1.1 is added 
to subparagraph 4.5.1, and the clause’s numerical designation places it 
beneath subparagraph 4.5.1. In addition, clause 4.5.1.1 begins with the caveat, 
“[e]xcept as otherwise provided in this Contract.” Subparagraph 4.5.1 does 
provide otherwise in certain cases. If the parties intended for clause 4.5.1.1 
to supplant subparagraph 4.5.1, they could have easily drafted language to 
accomplish exactly that.[6] Further, clause 4.5.1.1 does not 
mention the additional arbitration procedures set forth in subparagraphs 
4.5.2–4.5.7. If clause 4.5.1.1 negates subparagraph 4.5.1, as BISD contends, 
then subparagraphs 4.5.2–4.5.7 are meaningless. The placement, caption, and 
caveat of clause 4.5.1.1, as well as the language of subparagraphs 4.5.2–4.5.7, 
indicate that the clause is subordinate to subparagraph 4.5.1 if subparagraph 
4.5.1 applies in a given situation. 
BISD argues 
that such a construction would render clause 4.5.1.1 meaningless. We disagree. 
By its terms, clause 4.5.1.1 applies to “any dispute concerning a question of 
fact arising under this contract,” while subparagraph 4.5.1 applies to 
“[a]ny controversy or Claim arising out of or relating to the Contract, or the 
breach thereof . . . .” (emphasis added). While the scope of 
clause 4.5.1.1 is narrower than the scope of subparagraph 4.5.1, certain 
situations would fall solely under the factual dispute clause. For example, the 
construction contracts could have called for solid brass doorknobs throughout 
the schools. BISD could have argued that the doorknobs Wilson and Stotler used 
were brass-plated instead of solid brass. Whether the doorknobs are solid brass 
or brass-plated would be a factual dispute subject to clause 4.5.1.1. 
We hold that 
the arbitration agreements and clause 4.5.1.1 can be reconciled; the arbitration 
agreements are not susceptible to more than one reasonable interpretation and 
are therefore not ambiguous. Columbia Gas Transmission Corp., 940 S.W.2d 
at 589. 
B. Ambiguity Concerning the Scope of the Agreements
We next 
consider whether there is ambiguity concerning the agreements’ scope. The strong 
presumption favoring arbitration generally requires that we resolve doubts as to 
the scope of the agreements in favor of coverage. In re Kellogg, Brown & 
Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005); In re FirstMerit Bank, 
52 S.W.3d 749, 753 (Tex. 2001); Cantella & Co. v. Goodwin, 924 S.W.2d 
943, 944 (Tex. 1996) (per curiam) (orig. proceeding). Once an agreement is 
established, “a court should not deny arbitration ‘unless it can be said with 
positive assurance that an arbitration clause is not susceptible of 
an interpretation which would cover the dispute at issue.’” Prudential Sec. 
Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995) (per curiam) (orig. 
proceeding) (emphasis in original) (quoting Neal v. Hardee’s Food Sys., 
Inc., 918 F.2d 34, 37 (5th Cir. 1990)).
Here, BISD 
claims there are construction defects throughout the two schools. This dispute 
is a “controversy or Claim arising out of or related to the Contract” to build 
the schools and thus falls squarely within the scope of the arbitration 
agreements. 
We find no 
ambiguity in either the validity or the scope of these arbitration agreements. 
Trane and the third-party defendants have proven the existence of valid 
arbitration agreements that cover the present dispute. In re Oakwood Mobile 
Homes, Inc., 987 S.W.2d at 573. The trial court abused its discretion by 
denying the motions to compel arbitration after finding “the contract in 
question ambiguous.”
C. Waiver
Finally, BISD 
argues that Trane and Stotler waived any right to arbitrate. In a personal 
injury suit filed by students and teachers in a separate court, Trane, Stotler, 
and Mac’s Insulation, Inc. filed cross-actions against BISD, seeking indemnity 
in that case. Trane also filed the present suit against BISD to obtain 
injunctive relief to preserve evidence in that personal injury case. 
There is a 
strong presumption against waiver under the FAA. In re Vesta Ins. Group, 
Inc., __ S.W.3d __, __, 2006 WL 662335, at *2 (Tex. 2006) (per curiam). 
“Merely taking part in litigation is not enough unless a party ‘has 
substantially invoked the judicial process to its opponent’s detriment.’” 
Id. (quoting In re Serv. Corp. Int’l, 85 S.W.3d 171, 174 (Tex. 
2002)). In In re Vesta Ins. Group, Inc., we held that the relators, who 
litigated in the trial court for two years, did not substantially invoke the 
judicial process to their opponent’s detriment because the relators engaged in 
minimal discovery, and the real party in interest failed to demonstrate 
sufficient prejudice to overcome the strong presumption against waiver. 
Id. at __, 2006 WL 662335, at *3. 
Likewise, 
BISD has failed to demonstrate how the cross-actions for indemnity in the 
separate personal injury suit or Trane’s pursuit of injunctive relief related to 
that case have worked to BISD’s detriment. We hold that the actions of Trane, 
Stotler, and Mac’s Insulation, Inc. do not constitute waiver of their right to 
arbitrate. 
IV. Conclusion
The trial 
court abused its discretion by finding the contracts ambiguous and denying the 
motions to compel arbitration. There is no ambiguity in either the existence or 
scope of these arbitration agreements. We conditionally grant the writ of 
mandamus and direct the trial court to (1) vacate its order denying the 
motions to compel arbitration, (2) grant Stotler’s motion to compel 
arbitration, (3) conduct further proceedings to determine whether Wilson is 
entitled to arbitration,[7] and (4) conduct further 
proceedings to determine whether the various nonsignatories are entitled to 
arbitration. The writ will issue only if the trial court fails to comply. 
Insofar as we have granted full relief under our mandamus jurisdiction, we 
dismiss the related interlocutory appeal as moot.
 
_______________________________________
Don R. 
Willett
Justice
 
Opinion delivered: June 30, 
2006
 






[1] Document Synopses by Series, at 
http://www.aia.org/docs_series. The American Institute of Architects represents 
the professional interests of America’s architects. The AIA: Advocacy 
Community, Knowledge, at http://www.aia.org/about_default. Among 
other things, the AIA publishes industry standard documents for design and 
construction projects. About AIA Contract Documents, at 
http://www.aia.org/docs_about&defPr’1. Document A201 “is frequently 
adopted by reference into a variety of other agreements . . . to 
establish a common basis for the primary and secondary relationships on the 
typical construction project.” Instruction Sheet for AIA Document A201, 
General Conditions of the Contract for Construction—1987 Edition at 1, 
available at http://www.engin.umich.edu/class/cee431/AIA/A201Inst.PDF. In 
the instant case, the General Conditions incorporate the 1987 (14th) Edition of 
AIA Document A201, which is approved and endorsed by the Associated General 
Contractors of America. AIA Document A201, General Conditions of the Contract 
for Construction (1987). 

[2] Four third-party defendants filed independent motions 
to compel arbitration: Wilson, Stotler, Mijares Mora Architects, Inc., and 
Zamora Engineering, Inc. Mac’s Insulation, Inc. joined Stotler’s motion. Trane, 
Victoria Air Conditioning, Ltd., and Superheat Air Balancing Co., Inc. joined 
the Wilson and Stotler motions. Al Cardenas Masonry Inc. joined Trane’s motion. 
Sechrist-Hall Co., Wrightway Construction, Inc., and Rio Mechanical, Inc. joined 
the Wilson and Trane motions. The independent motions of Mijares Mora 
Architects, Inc. and Zamora Engineering, Inc. do not invoke the FAA or TAA. 
Wilson’s motion is not in the record, and we are thus unable to determine 
whether it invokes the FAA, TAA, both, or neither. All other motions invoke the 
FAA or both the FAA and the TAA. The motions of all subcontractors and 
second-tier subcontractors also argue that the doctrine of equitable estoppel 
allows nonsignatories to the Wilson and Stotler contracts to obtain the benefits 
of the arbitration agreements therein. 

[3] This Court undeniably has jurisdiction to review the 
correctness of the court of appeals’ decision that it lacked jurisdiction over 
the TAA-based interlocutory appeal. See McAllen Med. Ctr., Inc. v. 
Cortez, 66 S.W.3d 227, 231 (Tex. 2001) (“When a court of appeals determines 
that it lacks jurisdiction over an interlocutory appeal, this Court has 
jurisdiction to review that decision.”).

[4] While we continue to see no benefit in requiring 
parties to pursue parallel proceedings that are “unnecessarily expensive and 
cumbersome,” we remain mindful that “we may not enlarge appellate 
jurisdiction absent legislative mandate.” Jack B. Anglin Co., 842 S.W.2d 
at 272. We again invite the Legislature, “[i]n the interests of promoting the 
policy considerations of rigorous and expedited enforcement of arbitration 
agreements, . . . to consider amending the Texas Act to permit 
interlocutory appeals of orders issued pursuant to the Federal Act.” 
Id.

[5] Our analysis today proceeds under the FAA because, as a 
procedural matter, Trane and the third-party defendants only assert in their 
“Statement of Jurisdiction” that this Court has jurisdiction under Cortez 
to decide whether the lower court had jurisdiction. 66 S.W.3d at 231 (“When a 
court of appeals determines that it lacks jurisdiction over an interlocutory 
appeal, this Court has jurisdiction to review that decision.”). They do not 
assert “conflict or dissent” jurisdiction under the general interlocutory appeal 
statute. Tex. Gov’t Code § 
22.225(c).

[6] A subparagraph later in the Supplementary Conditions 
states that it “[d]elete[s] the first sentence [of subparagraph 5.2.1 of the 
General Conditions] and substitute[s] the following . . . .” 
Clearly, the parties thus were free able to delete and replace language in the 
General Conditions with language in the Supplementary Conditions, ands they had 
done so elsewhere. 

[7] Wilson’s motion to compel arbitration is not in the 
record.