680 So.2d 1327 (1996)
Rita Gay Ferrell CURTIS, Plaintiff-Appellee,
v.
Woodrow Clifford CURTIS, Defendant-Appellant.
No. 28698-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1996.
*1328 Kneipp & Hastings by Donald L. Kneipp, for Appellant.
Rankin, Yeldell, Herring & Katz by Stephen J. Katz, for Appellee.
Before HIGHTOWER and GASKINS, JJ., and PRICE, J.Pro.Tem.
GASKINS, Judge.
The defendant, Woodrow Clifford Curtis, appeals from a trial court ruling granting summary judgment in favor of the plaintiff, Rita Gay Ferrell Curtis. The trial court found that, during negotiations for a community property partition agreement, the defendant withheld information from the plaintiff regarding farming partnership profits received in 1994, after their physical separation and prior to their divorce judgment. This caused the plaintiff to incur an unanticipated income tax liability. The trial court ordered the defendant to reimburse the plaintiff the amount of income tax she was required to pay and also ordered him to pay her attorney fees and the costs of the proceedings. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiff, Rita Gay Ferrell Curtis and the defendant, Woodrow Clifford Curtis, were married in January, 1970. Mrs. Curtis was employed as a school teacher. Mr. Curtis was a farmer. In January, 1993, the parties formed the Curtis Farms Partnership, an Arkansas partnership. Each party owned a one-half interest in the farming partnership. On October 6, 1993, the plaintiff filed for divorce from the defendant. A judgment of divorce was filed on July 7, 1994.
On March 22, 1994, the parties entered into a contract for the settlement and partition of their former community property. Under the terms of the settlement, the plaintiff received $125,000.00 cash, bank accounts in her name, her retirement fund, household goods, a vehicle and life insurance policies on her life. The defendant received all right, title and interest in property, farming equipment, ASCS and other governmental payments for the 1993 farming operation, all *1329 stock of Regwood Farms, Inc., all assets of Curtis Farms Partnership, the 1993 income tax refund or liability of the parties and various lawn equipment, a satellite dish, financial accounts and life insurance policies in the defendant's name. The defendant also agreed to hold the plaintiff harmless from payment of all community debts including but not limited to:
(1) Bastrop National Bank crop loan
(2) Bastrop National Bank equipment note and loan
(3) John Deere Equipment Company
(4) Farm Chemical Company
(5) Bastrop National Bank note secured by 1988 Cadillac
(6) Farm Bureau Insurance Company
(7) Arkla Flyers, Inc.
(8) FAPCO, Inc.
(9) Regwood Farms, Inc.
(10) 1993 income tax liability
(11) All farming indebtedness
(12) All other indebtedness at Bastrop National Bank
The defendant harvested a cotton crop for Curtis Farms Partnership in 1993, but deferred the sale of some of the cotton until 1994. The defendant stated that the sale of the cotton was deferred from 1993 until 1994 in order to reduce his income tax liability. According to the defendant, Curtis Farms Partnership received $140,060.57 in income in 1994. This amount included $37,806.35 in cotton sales carried forward from 1993, as well as $11,630.00 in cotton gin rebates, $28,360.00 in government ASCS payments, $9,914.72 in advance calls and $52,349.50 in equity payments from Staplecoton, a non-stock cooperative. This income to Curtis Farms Partnership was given to defendant under the partition agreement. In 1995, the defendant sent to the plaintiff a schedule K-1 U.S. Partnership Return of Income Form for 1994 on Curtis Farms Partnership, showing that the plaintiff received $69,030.00 in income from the partnership, representing her one-half share. As a consequence, the plaintiff incurred income tax liability of $28,655.00. The IRS insisted that she pay this amount and seek reimbursement from the defendant, if she was entitled to any.
On February 9, 1995, the plaintiff filed the instant suit against the defendant for damages and for rescission of the community property partition agreement. She alleged that the defendant never consulted her or informed her that part of the 1993 cotton crop would be held over for sale in 1994. She also alleged that she did not receive the $69,030.00 in partnership profits attributed to her on the income tax form. The plaintiff contended that, under the provisions of the community property partition agreement, the defendant assumed all farming debts and agreed to hold her harmless from them. She contended that the defendant incurred the 1994 tax liability for Curtis Farms Partnership and, under the terms of the agreement, was responsible for paying the entire tax liability. The plaintiff sought damages in the amount of $69,030.00, plus her income tax liability and attorney fees and costs.
On September 14, 1995, the plaintiff filed a motion for summary judgment, arguing that the defendant concealed $140,000.00 in community assets and that the plaintiff was damaged in the amount of $28,655.00, her income tax liability.[1] She also sought attorney fees and costs. Her attorney filed an affidavit stating that attorney fees totaled $3,726.30. On November 15, 1995, the defendant filed an opposition to the motion for summary judgment, contending that there was no failure to disclose and urging that the plaintiff was aware that a portion of the 1993 cotton crop would be sold in 1994.
The motion for summary judgment was heard on November 16, 1995. The plaintiff argued that she was not consulted regarding the 1994 sale of cotton, but rather, the decision to defer the sale of a portion of the 1993 cotton crop was made unilaterally by the defendant. She contended that she never received the $69,030.00 reflected on the schedule K-1 income tax form. She argued that the defendant's failure to disclose a *1330 partnership asset resulted in her incurring an additional $28,655.00 in tax liability. She argues that under the terms of the community property settlement, the defendant received all the farm assets and assumed all the farming debts, therefore he should be required to assume all the income tax liability for Curtis Farms Partnership in 1994.
The defendant argued that for the plaintiff to prevail, she had to show that the defendant intentionally concealed the partnership assets from her. The defendant argued that during the settlement negotiations, the plaintiff was made aware that part of the cotton would not be sold until 1994 and that the government ASCS payments for 1993 had not yet been made. He argued that the plaintiff was first offered $75,000 in cash and eventually was paid $125,000, on the basis that there were farming profits yet to be received.[2] The defendant contended that Curtis Farms Partnership did not terminate until March 22, 1994, the date the community property partition agreement was executed. He further asserts that the $140,000.00 in partnership profits were received between January 1 and March 22, 1994, during the existence of the partnership. He also argued that while the community property partition specifically provided that the defendant would assume the 1993 income tax liability, the 1994 income taxes were not included in the agreement. The defendant contended that it was unclear whether there were any discussions about tax ramifications for 1994. Therefore, the defendant argued that there are genuine issues of material fact present in this case which preclude the granting of summary judgment.
The trial court found that the defendant was in control of the farming operations and that he failed to disclose the prospective partnership income, carried forward on the farming operations. The court found that this fact should have been disclosed and found that the partnership profits were concealed from the plaintiff. The trial court granted the plaintiff's motion for summary judgment, awarding her $28,655.00 in damages. The trial court also granted the plaintiff's request for attorney fees. Judgment was signed on November 30, 1995 and filed on December 4, 1995, granting the plaintiff's motion for summary judgment against the defendant for $28,655.00, plus $3,726.30 for attorney fees and expenses, with court costs assessed to the defendant. The defendant appealed suspensively from the trial court judgment, arguing that the trial court erroneously granted summary judgment in favor of the plaintiff. The plaintiff answered the appeal, seeking additional attorney fees for defending the appeal.

MOTION FOR SUMMARY JUDGMENT
The defendant argues that the trial court erred in granting summary judgment in favor of the plaintiff where there were genuine issues of material fact as to whether the defendant concealed assets. The defendant further asserts that whether the 1994 farming partnership income tax liability constituted "farming indebtedness" under the provisions of the community property partition was a genuine issue of material fact. The defendant argues that the trial court erroneously rendered summary judgment in favor of the plaintiff, based upon allegations which required judicial determinations of subjective facts, such as knowledge, intent, good faith and knowledge, determinations of which are not properly made upon a motion for summary judgment. The defendant further contended that the trial court erred in inquiring into the merits of the issues raised, rather than limiting its inquiry to the existence or nonexistence of genuine issues of material fact. We find that the defendant's arguments are without merit.
Motions for summary judgment are governed by La. C.C.P. art. 966. At the time this motion for summary judgment was decided by the trial court, La. C.C.P. art. 966 provided as follows:
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or *1331 part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
B. The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
D. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
Under this article, the mover had the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt on this score was resolved against granting the motion. This burden was a great one and only when reasonable minds must inevitably concur was a summary judgment warranted. To satisfy this burden, the mover was required to meet a strict standard by showing that it was quite clear what the truth was, and that it excluded any real doubt as to the existence of any genuine issue of material fact. Commercial National Bank in Shreveport v. Dance, 27,337 (La. App.2d Cir. 9/25/95), 661 So.2d 551, and cases cited therein.
This article was amended by La. Acts 1996 (First Ex. Session), No. 9. The amended version of the article provides that the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969, and that the procedure is favored and shall be construed to accomplish these ends. The amended article also provides that, notwithstanding any other provision of the article to the contrary, the burden of proof shall remain with the mover.
The amended version of this La. C.C.P. art. 966 has been held to be procedural in nature, and therefore, subject to retroactive application. Short v. Giffin, 96-0361 (La. App. 4th Cir. 8/21/96), ___ So.2d ___. See also NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App. 2d Cir. 8/21/96), 679 So.2d 477. See and compare Walker v. Kroop, 96-0618 (La.App. 4th Cir. 7/24/96), 678 So.2d 580. Under the facts presented in this case, we need not discuss the retroactivity of the amended article. We find that, under either version of La. C.C.P. art. 966, the trial court correctly granted summary judgment in favor of the plaintiff.
Both versions of La. C.C.P. art. 966 stipulate that the mover bears the burden of proof and is required to show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Further, when a motion for summary judgment is made and supported, an adverse party may not rest on mere allegations or denials in his pleadings, but his response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Commercial National Bank in Shreveport v. Dance, supra. Appellate courts review summary judgment de novo under the same criteria that governs the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La.1993); Commercial National Bank in Shreveport v. Dance, supra.
In the present case, the defendant argues that the trial court erred in finding that the profits of the partnership were concealed from the plaintiff. The defendant contends that the issues of whether the plaintiff knew the partnership would receive profits in 1994 and whether the parties contemplated the 1994 tax liability during their negotiations in partitioning their community property, constitute *1332 genuine issues of material fact which preclude the granting of summary judgment.
We find that the issue of whether the plaintiff concealed partnership profits from the plaintiff is not essential to the decision to grant the summary judgment in favor of the plaintiff. We find that the pleadings, depositions, answers to interrogatories, affidavits and attachments thereto, considered with the terms of the community property partition agreement, demonstrate that the defendant assumed all farming indebtedness. We find this includes the 1994 income tax liability for Curtis Farms Partnership. The record shows that, under the terms of the community property partition agreement, which was introduced in connection with this motion for summary judgment, the defendant received all the assets of the parties' farming interests, including Curtis Farms Partnership, and assumed liability for all farming indebtedness. It is undisputed that the Curtis Farms Partnership received more than $140,000.00 in various payments in 1994 attributable to the farming operations in 1993. The defendant stated that he applied these proceeds to debts he assumed under the terms of the partition agreement. The defendant merely argues that the 1994 income tax liability for Curtis Farms Partnership was not a community debt or a farming indebtedness assumed in the partition agreement. This argument is insufficient to defeat the clear terms of the partition agreement. Under the facts presented here, where one party has assumed all the assets of a farming partnership and has assumed all farming debts, we conclude that this includes the debts of the farming partnership, including the 1994 income tax liability. We find that the 1994 income tax liability of Curtis Farms Partnership was a "farming indebtedness" assumed by the defendant under the partition agreement. Accordingly, we affirm that portion of the trial court judgment granting summary judgment in favor of the plaintiff, ordering the defendant to reimburse the plaintiff $28,655.00 in income tax she was required to pay for 1994.

ATTORNEY FEES
The defendant also asserts that the trial court erred in awarding the plaintiff attorney fees and costs. He contends that, under the conditions of the partition agreement, the defendant is not liable for the plaintiff's attorney fees unless he refused to pay a debt that he assumed under the agreement. The plaintiff answered the appeal, requesting an additional attorney fee award of $2,500.00 for reasonable attorney fees and expenses incurred in the appeal of this matter.
As a general rule, attorney fees may not be awarded to a successful litigant unless specifically provided for by statute or contract. O'Brien v. Remington Arms Co. Inc., 601 So.2d 330 (La.App. 2d Cir.1992), writ denied 604 So.2d 1003 (La.1992). In the present case, in the community property partition agreement, the parties agreed to indemnify each other for any losses sustained if one party failed to pay a debt assumed under the agreement. That provision provided as follows:
The parties further stipulate and agree that neither of the parties hereto shall have or enjoy the right to rescind this community property settlement due to any failure of either party hereto to pay the debt assumed by either of the parties hereto, provided, however, that either party hereto shall have the unrestricted right to demand of the other indemnification for any loss he or she might sustain by virtue of the other failing to pay the debts assumed herein.
This clause constitutes a "hold harmless" or indemnity provision. An obligor under such provisions is liable for reasonable attorney fees incurred by the obligee, even though the obligatory provision does not specifically authorize attorney fees. South Central Bell Telephone Co. v. Gaines Petroleum Co. Inc., 499 So.2d 521 (La.App. 2d Cir.1986). As stated above, we find that the 1994 income tax liability for Curtis Farms Partnership was a farming indebtedness assumed by the defendant in the agreement that he refused to pay. Therefore, the defendant was liable for the plaintiff's attorney fees. The reasonableness of an attorney fee is within the great discretion of the trial court. Sims v. Hays, 521 So.2d 730 (La.App.2d Cir.1988). Based upon the facts of this case, we find that the trial court did not err in awarding *1333 attorney fees to the plaintiff in the amount of $3,726.30.
On appeal, the plaintiff seeks an additional attorney fee award for defending the appeal. An increase in attorney fees may be awarded where a party who was awarded attorney fees by the trial court is forced to and successfully defends an appeal. Sims v. Hays, supra; Security First National Bank v. Richards, 584 So.2d 1174 (La.App. 3d Cir. 1991). We find that a reasonable attorney fee award for this appeal is $1,000.00.

CONCLUSION
For the reasons stated above, we affirm the trial court ruling, granting summary judgment in favor of the plaintiff, Rita Gay Ferrell Curtis, ordering the defendant, Woodrow Clifford Curtis, to reimburse the plaintiff $28,655, the amount of plaintiff's income tax liability caused by the failure of the defendant to pay a farming indebtedness assumed in the community property partition agreement between the parties. We also affirm that portion of the trial court judgment awarding attorney fees to the plaintiff in the amount of $3,726.30. We make an additional attorney fee award to the plaintiff of $1,000.00 for successfully defending this appeal. Costs in this court and in the court below are assessed to the defendant.
AFFIRMED.
NOTES
[1] In the motion for summary judgment, the plaintiff prayed only for her income tax liability plus attorney fees and costs. She did not seek the $69,030.00 in partnership profits nor did she seek to rescind or modify the community property partition agreement.
[2] We note that the plaintiff was given only $50,000.00 more than the defendant's original offer, even though the defendant now contends that the plaintiff's share of the 1994 partnership profits was $69,030.00.