NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-417

CHARLES HARPER BRIGNAC, JR.

VERSUS

MONICA ALLEMAN BRIGNAC

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20162352
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED.**

**Diane Sorola**
**402 W. Convent Street**
**Lafayette, LA   70501**
**(337) 234-2355**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Monica Alleman Brignac**

**James Louis Daniels**
**110 E. Kaliste Saloom, Suite 210**
**Lafayette, LA   70508**
**(337) 706-8931**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Charles Harper Brignac, Jr.**

**PERRET, Judge.**

This appeal arises out of a Rule to Enforce Judgment Partitioning Community Property filed by Appellant, Monica Alleman ("Monica"), against her former husband, the Appellee, Charles Harper Brignac, Jr. ("Charles"). For the following reasons, we affirm the trial court's judgment that dismissed the rule with prejudice and awarded attorney fees in the amount of $2,500.00 to Charles.

**FACTS AND PROCEDURAL HISTORY:**

Monica and Charles were married on December 22, 1997, in Ville Platte, Louisiana and established their matrimonial domicile in Lafayette Parish, Louisiana.[1] On May 3, 2012, Charles and Monica registered a limited liability company with the Louisiana Secretary of State under the name of "Precision Farms, L.L.C." ("Precision") with Charles designated as the Managing Member. Precision was owned equally by Charles and Monica and the company contained various parcels of immovable property.

On May 2, 2016, Charles filed a Petition for 102 Divorce and Partition Community Property and, according to the minutes of the court, a judgment of divorce was rendered on March 6, 2017.[2]

On November 7, 2017, Charles entered into a contract to sell 474.9 acres of Precision for $1,282,230.00, with the proceeds being deposited into the Precision bank account. The HUD-1 Settlement Statement,[3] which was submitted as evidence at the hearing, indicates that $984,384.72 of the revenue received from the act of

---

[1] One child was born of their marriage, Ashton Charles Brignac, who is now of the age of majority.

[2] It is worth noting that Charles previously filed for a divorce in 2006, during which time the parties partitioned their community property; however, the parties thereafter reconciled and subsequently dismissed the petition for divorce.

[3] According to Wikipedia, a "HUD-1 Settlement Statement is a standardized mortgage lending form in use in the United States of America on which creditors or their closing agents itemize all charges imposed on buyers and sellers in consumer credit mortgage transactions."

sale was used as follows: (1) payment of $150,110.00 to seller (i.e. Monica), (2) $284,050.72 to pay off a first mortgage loan, number 886954; (3) $67,855.46 to pay off a second mortgage loan, number 902712; (4) $380,138.96 to pay off loan number 933803; (5) $53,422.38 for installment payment on loan number 919147; (6) $48,136.40 for installment payment on loan number 907928; and (7) $670.80 in county taxes.

On November 13, 2017, Charles filed into the record a Judgment Partitioning Community Property, which provided that the termination of the former community regime be made retroactive to May 18, 2016. The consent judgment was also recorded in the Lafayette Parish conveyance records on November 17, 2017.

On December 7, 2018, Monica filed a Rule to Enforce Judgment Partitioning Community Property, which alleged the following pertinent allegations [emphasis in original]:

5.

The Judgment [Partitioning Community Property] allocated, transferred, and assigned in full ownership to CHARLES:

8. *All community interest in the juridical entity known as "Precision Farms, L.L.C.," which necessarily includes all assets owned by or registered in the names of such entity, and **all current and future debts of said limited liability company, including, without limitation, any unsecured debt that was incurred on behalf of the company**;*

6.

In connection with the filing of the 2017 tax return for Precision Farms, L.L.C. Respondent [Charles] had issued to MONICA a K-1 tax form which erroneously recites that MONICA received a distribution from Precision Farms, L.L.C. of $390,000.00 presumably from the aforementioned sale of immovable property owned by the L.L.C.

2

7.

MONICA did not receive any such distribution, instead CHARLES received all of the sale proceeds and, as stated, deposited the proceeds into his business, Precision Farms, L.L.C.

8.

Despite not receiving a single penny from the sale which generated the aforesaid monies, CHARLES is demanding that MONICA pay one-half (1/2) of the taxes due as a result of the sale because the sale was confected prior to the signing of the judgment partitioning the parties' former community of acquets and gains.

9.

Our understanding of CHARLES' position is that the taxes owed as a result of the sale of the immovable property owned by Precision Farms, L.L.C. is to be paid by the owners not the L.L.C., and thus, even though CHARLES did not give MONICA her one-half (1/2) of the sale proceeds, but instead, put all of the monies into the L.L.C. of which he had exclusive control, MONICA should shoulder the burden of one-half (1/2) of the taxes resulting from the sale.

10.

Mover avers that if CHARLES would pay her one-half (1/2) of the proceeds of the sale as he recites in the tax forms filed with the IRS, she would certainly be willing to pay the estimated $89,000.00 in taxes due as a result of the sale, however, absent that, she avers that the above-quoted No. 8 in the partition judgment is controlling.

11.

In sum, CHARLES sold the property owned by Precision Farms, L.L.C.; he deposited the proceeds of the sale into the L.L.C. account; he caused to be issued a K-1 to MONICA where the form erroneously recites that MONICA received one-half (1/2) of the sale proceeds as a distribution; the L.L.C. remains, as it was prior to the signing of the partition judgment, under CHARLES' exclusive control; and he now asserts that MONICA must pay $89,000.00 in taxes on money she never received.

12.

Section No. 8 as quoted above clearly provides that CHARLES is responsible for all **current and future debts** of the L.L.C. due and owing at the time the Judgment was signed, and further, provides that CHARLES is responsible, without limitation, for "*any unsecured debt that was incurred for the benefit of the company.*"

3

. . . .

14.

MONICA contends that CHARLES has breached his obligations under the Judgment of Partition by failing to pay all current and future debts of the L.L.C., including that debt which forms the basis of this dispute, to wit: 2017 tax liability resulting from the sale of immovable property formerly belonging to precision Farms, L.L.C.

15.

MONICA seeks enforcement of the provisions of the Judgment partitioning the community of acquets and gains formerly existing between the parties and asks that CHARLES be ordered to pay all of the outstanding taxes, penalties, interest, and fees due resulting from his sale of the aforesaid parcels of immovable property, and moreover, that pursuant to the aforesaid judgment, she be awarded attorney's fees of not less than Twenty-Five Hundred Dollars ($2500.00) for the cost of employing an attorney to bring this action all as provided for in the partition judgment signed on November 13, 2017.

In his opposition to the rule, Charles argued that he and Monica "needed to sell the Precision Farms real estate to pay off the Precision Farms debt which was in default, and to provide funds to pay Monica her demand for cash from the community property as well as to pay down and/or off other community debt." Charles argued that, in addition to the $150,110.00 payment made to Monica from the sales proceeds, he signed a promissory note agreeing to pay her $400,000.00 over the next four years. Charles alleged that it was their intent "to sell certain Precision Farms assets to generate enough cash to stay afloat on the other community property debt and to pay Monica $550,000.00." Charles argued that he assumed the remaining community property debt and that "[i]n short, Monica wanted to walk away with $550,000.00, as provided by the Partition Agreement . . . and debt free from all of the other community property debt." Charles argued that Monica is responsible for taxes assessed to her because income from the sale of property held in Precision was to be allocated in proportion to her interest, which was fifty percent at the time of sale, and because the consent partition agreement provides that Monica was to be responsible for her own federal taxes after January 1, 2017. Charles

requested that the rule be dismissed and that he be entitled to attorney fees to cover his costs to defend this issue.

After a hearing on the Rule to Enforce Judgment, the trial court provided the following oral reasons for dismissing the rule and assessing Monica with costs:

> The parties having reached a compromise pursuant to La. C.C. art. 3071 filed their Judgement Partitioning Community Property on November 9, 2017. Said judgment was approved as to form and content and signed on November 9, 2017 by both parties along with their respective attorneys.
>
> Regarding Schedule K-1 of the parties' 2017 tax return, both parties' experts disagree as to whether that tax form incorrectly reported distributions to the parties from the sale of the immovable property, Precision Farms. (Schedule K-1, Box 19). It is not the job of this court to remedy errors reported on the parties' tax/accounting forms. It is uncontested that on the date of the sale of the Precision Farms property, both parties each owned a 50% interest in said property. Precision Farms, LLC is classified a partnership, where the tax liability lies with each individual member, not the company. It is clear that both plaintiff and defendant agreed that "each party further agrees to and declares that each party shall be solely responsible for their own local, state, and federal taxes as of January 1, 2017." (Section D4 of Judgment Partitioning Community Property).
>
> The Court does not find that the Plaintiff [Charles] is obligated to indemnify the Defendant [Monica] for taxes, interest, or penalties associated with her income or gains reported on her 2017 tax forms.
>
> [Monica] argues that [Charles] owes her $150,000 as a portion of the sales proceeds which he was obligated to pay to [her] at the execution of the partition agreement. Under the language of the Judgment Partitioning Community Property, $150,000.00 was to be paid to [Monica] upon her execution of the above referenced judgment. Said Judgment signed by the parties and filed on November 9, 2017, was further made an Order by the signing of this court on November 13, 2017.
>
> Neither party disputed the November 8, 2017 letter in evidence to counselors for the parties, from the Law Office of Bruce Gaudin, referencing the $150,000.00 payment at issue. The letter from Mr. Gaudin states in part, "As instructed, I am holding two checks, representing part of the proceeds of the sale of the farm by Precision Farms to Lionel Mounier. One check is for $140,000.00, payable to Monica Brignac, and one is for $10,000, payable to Diane Sorola [i.e. Mrs. Brignac's attorney]." The court having no evidence disputing that Mr. Gaudin did not release said $150,000.000 some two years ago, finds that [Charles] has satisfied his obligation under the terms of the Judgment Partitioning Community Property, and that [Monica] having

5

received said $150.000.00 has no further claim that said payment is owed her.

The court finds that the arguments in [Monica's] Pretrial memorandum regarding Unjust Enrichment, Detrimental Reliance, and Nullification of the Partition Judgment based upon Error of Fact are without merit.

It is the ruling of this court that the intent of the parties is evidenced by the clear terms of the community property agreement, and the court enforces their agreement as written, without the need to nullify any portion of said agreement. As such, [Monica's] rule nisi is dismissed, with costs assessed against [Monica].

A judgment in accordance with this oral ruling was signed on May 8, 2020.

It is from this judgment that Monica appeals, alleging the following four assignments of error:

1. The Trial Court erred in concluding that Section D1[][4] of the parties' Judgment Partitioning Community Property wherein the parties were obligated to hold each other harmless from and indemnify each other for any liability in connection with debts and liabilities, associated with the transfer of the movables and immovables, which were not specifically identified in the judgment was neither relevant nor enforceable.

2. The Trial Court erred in finding that Appellant argued before the Trial Court that the Appellee owed her the sum of $150,000.00 as a portion of the sales price of immovable property owned by Precision Farms, L.L.C.

3. The Trial Court erred in finding that Appellant's argument relative to Detrimental Reliance was without merit.

4. The Trial Court erred in awarding attorney's fees to CHARLES payable by MONICA insofar as MONICA did not default, breach and/or refuse or neglect to carry out any other the mutual covenants, undertakings, terms, conditions, obligations, representations, warranties, promises and acknowledgements contained in the Judgment partitioning their former community as required under the "OTHER PROVISIONS" portion of the aforesaid judgment under Section G.

---

[4] Section D1 of the consent judgment provides as follows:

Each party shall be solely responsible for any all debt and liabilities associated with the transfer of the above identified movables and immovables of each said party not specifically identified hereinabove, and each party shall hold the other party harmless from and indemnify said party for an liability in connection with said debts, including any attorney's fees expended to defend any action which may be brought against the other party as a result of said debts.

**STANDARD OF REVIEW:**

Generally, a contract is examined on its four corners, without the need for extrinsic evidence, as a matter of law. However, "[w]here factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown." *Evangeline Parish Sch. [Bd.] v. Energy Contr.*, 617 So.2d 1259, 1265 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1228 (La.1993) (quoting *Borden, Inc. v. Gulf States Utilities Co.*, 543 So.2d 924, 928 (La.App. 1 Cir.), *writ denied*, 545 So.2d 1041 (La.1989)).

When appellate review is not premised upon any factual findings made at the trial level but is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. *Id.* Rather, in such cases, appellate review of questions of law is whether the trial court was legally correct or legally incorrect. *Id.*

**DISCUSSION:**

In her first and second assignments of error, Monica alleges that the trial court erred in finding her liable for a portion of Precision's 2017 federal taxes based upon the consent judgment that partitioned her community property regime. Specifically, Monica alleges that the trial court erred in believing that Charles "owed her $150,000.00 of the sales proceeds separate and apart from the equalizing payment" rather than finding that "the $150,000.00 was a partial payment on the equalizing payment owed" by Charles to her as a result of the partition. Monica argues that the "sales proceeds may have been the source of money for the payment made by [Charles], but it was not a distribution of the sales proceeds to [her]." Thus, Monica argues that Charles agreed to pay her the sum of $150,000.00 upon the execution of the consent judgment, representing a partial payment of the $550,000.00 he personally owed to her as an equalizing payment, and that she never received a distribution from Precision following the sale of immovable property.

In response, Charles argues that both the consent judgment of partition and the mandates of the Internal Revenue Code support the trial court's judgment dismissing Monica's rule. Charles alleges "that the profits and/or losses of [Precision], had always been, as it was required [under the Internal Revenue Code Section 1.706-4(e)], allocated to its members in proportion to their ownership interest[,]" and that the sale of immovable property in Precision created a tax liability for its members, which at the time of the sale was fifty percent to Monica and fifty percent to him. Additionally, Charles argues that Monica is "obligated to abide by the clear and unambiguous terms of the consent Judgment of Partition[,]" particularly section D-4, which provides: "[e]ach party further agrees to and declares that each party shall be solely responsible for their own local, state and federal taxes as of January 1, 2017." We agree.

According to La.Civ.Code art. 3071, "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." As stated in *Hardy v. Hardy*, 18-0487, p. 5 (La.App. 1 Cir. 2/28/19), 273 So.3d 448, 453 (citations omitted):

> A consent or a stipulated judgment is a bilateral contract by which the parties adjust their differences by mutual consent, with each party balancing his hope of gain against his fear of loss. Its binding force arises from the voluntary acquiescence of the parties rather than the adjudication by the court. Generally, there is no right to appeal a stipulated or consent judgment.

Louisiana Civil Code Article 2046 sets forth a general rule of construction, providing, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." In this case, the parties do not dispute that on November 13, 2017, they, along with their attorneys, entered into a valid comprise to partition their community property.

The tax liability was covered in the consent judgment and provided that, as of January 1, 2017, each party "agrees to and declares that each party shall be solely responsible for their own local, state and federal taxes." We find this plain wording under section D4 of the consent judgment controlling, especially considering the fact that the consent judgment was entered into after Precision sold the 474.9 acres of immovable property. Under this analysis, it is of no moment whether Monica received a distribution from Precision or not as she would have been liable for federal taxes at the time of the sale due to her fifty percent ownership interest in the company on November 7, 2017.

Although Monica cites to *Curtis v. Curtis*, 28,698 (La.App. 2Cir. 9/25/96), 680 So.2d 1327, to support her argument that Charles is "responsible for payment of all taxes on income generated by the limited liability company[,]" we find that the facts of that case are inapplicable to the facts of this case. In *Curtis*, a former husband and wife entered into a consent judgment that partitioned their former community property. The wife sued the former husband for allegedly violating the community property settlement contract when husband failed to pay income taxes on a farming partnership. Specifically, the wife argued that the husband concealed $140,000.00 in community assets at the time of the consent judgment and that she was damaged in the amount of $28,655.00, her income tax liability. The courts ruled in favor of the wife finding that under the clear terms of the consent judgment, the husband assumed all the assets and debts of the farming partnership, which included the 1994 income tax liability.

However, in the case sub judice, the 474.9 acres of immovable property held in Precision had already been sold prior to the parties entering into the consent judgment and the parties specifically addressed taxation in their consent judgment. Unlike the wife in *Curtis*, Monica was fully aware of Precision's decision to sell immovable property prior to entering into the consent judgment and she also agreed

9

in the consent judgment to "be solely responsible for [her] own local, state, and federal taxes as of January 1, 2017." Accordingly, we find no merit to these two assignments of error.

In her third assignment of error, Monica alleges that the trial court erred in finding no merit to her detrimental reliance argument. Specifically, she argues that she detrimentally relied upon the clear language of the community partition agreement that Charles would pay "all current and future debts of said limited liability company, including, without limitation, any unsecured debt that was incurred on behalf of the company." Monica argues that she "reasonably believed that such language ensured that she would not be saddled with tax liabilities for a company which she no longer owned or on money generated by a sale of the company's property out of which she received nothing."

In response, Charles argues that there was no "'unjust' impoverishment suffered" by Monica because she received the payment of $150,000.00 cash, the payoff and/or pay down of substantial community debt of approximately $834,000.00; and a $400,000.00 promissory note payable over four years.

The concept of detrimental reliance is codified in La.Civ.Code art. 1967, which provides:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promise's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

"To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the

10

reliance." *Luther v. IOM Co., LLC*, 13-353, pp. 10-11 (La. 10/15/13), 130 So.3d 817, 825.

After a review of the record, we cannot say that the trial court manifestly erred in finding no merit to Monica's detrimental reliance argument. Monica was represented by counsel when she signed the consent judgment and the agreement specifically addressed Monica's tax responsibilities. Such an assumption that Charles would pay her federal taxes based on the language that "all current and future debts of said limited liability company, including, without limitation, any unsecured debt that was incurred on behalf of the company[,]" was unreasonable in light of the parties agreement to include a "tax liability" provision in the judgment. Accordingly, we agree with the trial court that Monica has not shown that the elements of detrimental reliance are present in this case and, thus, we find no merit to this assignment of error.

Monica's fourth assignment of error alleges that the trial court erred in awarding attorney fees to Charles in the amount of $2,500.00. Charles responds that the trial court correctly awarded the minimum fee due after Monica breached the consent judgment "by failing to pay her own 2017 Federal taxes resulting from the sale of the PRECISION property . . . as provided for in the Internal Revenue Code and as agreed to by the parties in D-4 of the Judgment of Partition."

Both Monica and Charles cite to section G, under the "Other Provisions," in the consent judgment to argue whether attorney fees are recoverable under these facts. This section provides as follows:

> G. Each party agrees and confirms that this partition is entirely dependent upon the mutual covenants, undertakings, terms, conditions, obligations, representations, warranties, promises and acknowledgments contained in this Judgment, and that if either CHARLES HARPER BRIGNAC, JR. or MONICA ALLEMAN shall default, breach and/or refuse or neglect to carry out any of the said mutual covenants, undertakings, terms, conditions, obligations, representations, warranties, promises and acknowledgements imposed upon him or her by this Judgment, the non-breaching, or non-defaulting,

11

party shall, without the necessity of putting into default, said putting into default being specifically waived, have the option of bringing an action for specific performance and/or damages by summary proceeding, and the non-breaching, or non-defaulting, party shall be entitled, from the breaching, or defaulting, party, reasonable attorney's fees not to be less than Twenty Five Hundred Dollars ($2,500.00), that may be incurred by the non-breaching, or non-defaulting party, as a result of having to employ an attorney at law to enforce their rights contained in this Judgment.

Based on this provision, we find no manifest error in the trial court's decision to awarded attorney fees to Charles in the amount of $2,500.00 since Monica failed to comply with her obligations to pay her local, state, and federal taxes as of January 1, 2017. Accordingly, we find no merit to this argument.

Although Charles has requested, via his appellee brief, an increase in attorney fees for defending this appeal, La.Code Civ.P. art. 2133[5] and the jurisprudence are clear that an appellate court cannot award any additional amount where the appellee fails to answer the appeal or file a cross-appeal. *See Broussard v. Asco Venture Holdings*, 17-90, 17-91 (La.App. 3 Cir. 10/4/17), 229 So.3d 80. Because Charles failed to answer or file a cross-appeal, we will not consider his request for additional attorney fees.

---

[5] Louisiana Code of Civil Procedure Art. 2133 provides as follows:

A. An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.

B. A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.

For these reasons, we affirm the trial court judgment that dismissed Monica's Rule to Enforce Judgment Partitioning Community Property and awarded Charles $2,500.00 in attorney fees.  Costs of this appeal are assessed to appellant, Monica Alleman.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.